IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PAUL SUGAR, JR. *et al.*,

    Plaintiffs,

v.                                                                         No. 1:20-cv-00331-KWR-LF

DAVID TACKETT *et al.*,

    Defendants.

## **ORDER GRANTING TEMPORARY RESTRAINING ORDER AND NOTICE OF HEARING ON APPLICATION FOR PRELIMINARY INJUNCTION**

**THIS MATTER** comes before the Court on Plaintiffs' Application for Temporary Restraining Order and Preliminary Injunction **(Doc. 49)**, filed on May 19, 2021. Plaintiffs seek a temporary restraining order (TRO) and preliminary injunction prohibiting Defendants from consummating the sale of and commingling 11,300 pounds of No. 8 turquoise in Defendants' possession that Plaintiffs allege belong to Plaintiffs. **Doc. 49 at 1, 12.** After reviewing the record and the applicable law, the Court finds that Plaintiffs' requests for a TRO and an expedited hearing on their preliminary injunction application are well-taken and should be **GRANTED**.

## BACKGROUND

This case involves claims for breach of contract, breach of the duty of good faith and fair dealing, misrepresentation, fraud, conversion, recission, and unjust enrichment arising from a transaction over the 11,300 pounds of No. 8 turquoise Plaintiffs allege they own that Defendants have possessed since 2017. *See* **Doc. 1.** In April 2020 when Plaintiffs filed their Complaint, the No. 8 turquoise at issue was the subject of a stipulated preliminary injunction, which was entered in August 2019 in a 2018 case pending in the United States District Court for the District of Nevada. *See* **Doc. 1 at ¶ 36; Doc. 33 at 2 (Stipulation #4); Doc. 49-7.** The stipulated preliminary

injunction provided that David Tackett "shall not dispossess any of the No. 8 Turquoise . . . in dispute"—including "the Number 8 Turquoise acquired by . . . David Tackett from Paul Sugar, Sr. and/or Paul Sugar, Jr."—"until further order of this Court." **Doc. 49-7 at 2, 3.** Plaintiffs learned in early April 2021 that the stipulated preliminary injunction in the Nevada case "had been dissolved as part of a judgment against David Tackett." **Doc. 49-4 at ¶ 6.**

On April 12, 2021, Plaintiffs and David Tackett reached a settlement agreement, subject to the condition that Plaintiffs accept the turquoise, which they were to be given an opportunity to inspect. **Doc. 44.** The deadline for the parties to arrange for inspection of the turquoise and finalize their settlement agreement was May 14, 2021. *Id.* On May 14, the parties notified the Court that they "have been unable to agree on the written terms of the tentative settlement agreement and release that was to be drafted following the settlement conference." **Doc. 46 at 1.**

Plaintiffs allege that on May 18, 2021, David Tackett informed Plaintiffs' counsel that "he had sold the Plaintiffs' turquoise to someone who was 'aware' of the circumstances or issues surrounding the turquoise, and that the turquoise was no longer stored at" the storage unit in Flagstaff, Arizona where Plaintiffs believed it was located. **Doc. 49 at 2–3.** David Tackett has allegedly refused to disclose both the identity of the buyer and the current location of the turquoise. *Id.* **at 3; Doc. 49-4 at ¶ 5.** Plaintiffs seek injunctive relief because of the potential for immediate and irreparable harm they allege they will suffer should Defendants consummate the sale of the subject turquoise and/or commingle it with other turquoise in Defendants' possession. **Doc. 49 at 6–9.**

## STANDARD

The purpose of preliminary injunctive relief is to "preserve the relative positions of the parties" until a hearing or trial on the merits can be held. *Univ. of Tex. v. Camenisch*, 451 U.S. 390,

395 (1981). "In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits." *Keirnan v. Utah Transit Auth.*, 339 F.3d 1217, 1220 (10th Cir. 2003) (quotation marks and citation omitted). To obtain preliminary injunctive relief—whether a TRO or preliminary injunction—the movant must show: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quotation marks and citation omitted); *cf. Legacy Church, Inc. v. Kunkel*, 455 F. Supp. 3d 1100, 1131–32 (D.N.M. 2020) ("The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order."). Under Federal Rule of Civil Procedure 65, a court "may issue a temporary restraining order without written or oral notice to the adverse party" if two conditions are met: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

## DISCUSSION

Plaintiffs seek a narrow TRO prohibiting Defendants from "consummating the sale or comingling [sic] of the No. 8 turquoise that [D]efendants took from Plaintiffs." **Doc. 49 at 12.** Plaintiffs argue that preliminary injunctive relief should issue because they have shown that: (1) they are likely to succeed on the merits of their contract and tort claims against Defendants, whom they allege have no legal rights to the turquoise; (2) they will suffer irreparable harm if Defendants are not prevented from dispossessing and/or commingling the subject turquoise; (3) it would be

3

unfair to allow Defendants to take advantage of the recent dissolution of the stipulated preliminary injunction and disintegration of the settlement agreement and "arrange for an expeditious sale and transfer of the turquoise" before the merits of Plaintiffs' case can be decided; and (4) it is not contrary to the public interest to preserve the status quo—i.e., require Defendants to remain in possession of the subject turquoise—so that Plaintiffs may have their day in court and prove their claims. *See id.* **at 7–10.** The Court agrees.

On the record before the Court, Plaintiffs have demonstrated that there is a likelihood that they will succeed on the merits of their claims. Plaintiffs allege that they are the rightful owners of 11,300 pounds of No. 8 turquoise of which Defendants wrongfully dispossessed them, for which Defendants have not paid them, and that Defendants have refused to return to Plaintiffs despite Plaintiffs' demands. Nothing presently before the Court indicates that Defendants have any rights in the subject turquoise. Moreover, Plaintiffs have shown that should preliminary injunctive relief not issue, there is a substantial likelihood that Plaintiffs will suffer the imminent, irreparable harm of the lost opportunity to reclaim and market their unique product. David Tackett's alleged admission that he "sold" Plaintiffs' turquoise and his refusal to disclose the identity of the buyer and the location of the turquoise are particularly concerning. That is especially so considering that on May 14, 2021—the same day the parties notified the Court that their settlement agreement fell through—David Tackett acknowledged in a filing in the Nevada case that he (1) "made a sales contract with my father, Steve Tackett, for the stabilization and sale of the turquoise" belonging to one of the parties in the Nevada case, and (2) was without knowledge of the whereabouts or status of that turquoise because Steve Tackett insisted on a non-disclosure provision keeping the whereabouts of the turquoise and his workplace unknown even to David Tackett. **Doc. 49-6 at 2.**

Based on the foregoing, the Court is satisfied that there is a specific, great, and actual irreparable injury that—on this record—appears to the Court will surely result without the issuance of a TRO.

The balance of equities also weighs in Plaintiffs' favor. Defendants have possessed the subject turquoise for nearly four years at a storage facility and, until recently, were prohibited from dispossessing the subject turquoise under the stipulated preliminary injunction in the Nevada case. Any harm that may flow to Defendants based on a further prohibition against dispossessing the turquoise is minimal. Finally, issuing a TRO to allow Plaintiffs to meaningfully preserve their opportunity to seek enforcement of the agreement they allegedly made with Defendants and/or repossess property they allege was wrongfully taken from them is not adverse to the public interest.

Regarding notice, Plaintiffs served David Tackett with the Application via email on May 19, 2021 and argue that a TRO should issue without providing Defendants an opportunity to be heard because their recent actions "strongly suggest" that they "will take additional steps to hide or dispose of the turquoise before this matter can be fully addressed by the Court." **Doc. 49 at 7, 11.** The Court shares this concern. As noted previously, David Tackett has acknowledged that he "sold" Plaintiffs' turquoise and is refusing to disclose the name of the buyer and whereabouts of the turquoise. The record also contains evidence that David Tackett recently contracted with his father, Steve Tackett, "for the purposes of the stabilization and then the sales" of other turquoise upon learning that "judgments had been made and the order not to sell was no longer in effect[.]" **Doc. 49-6 at 2.** Steve Tackett "operates a company under the name 'Turquoise Liquidators[,]'" **Doc. 1 at ¶ 25**, and insisted that the contract with David Tackett include a non-disclosure agreement so that David would not be allowed to know or share the location of the turquoise in Steve Tackett's possession. **Doc. 49-6 at 2.** Steve Tackett was served with notice of this lawsuit in August 2020 and has not appeared either personally or through counsel. *See* **Docs. 24, 27.** A

Clerk's Entry of Default was entered against Steve Tackett in September 2020. **Doc. 28.** In light of the foregoing, the Court finds it necessary and appropriate to issue this TRO without first hearing from Defendants.

**IT IS THEREFORE ORDERED THAT:**

1. Defendants and persons who are in active concert or participation with Defendants are prohibited from consummating the sale of and/or dispossessing any of the No. 8 turquoise that is the subject of this lawsuit.

2. Defendants and persons who are in active concert or participation with Defendants are prohibited from commingling any of the subject No. 8 turquoise with other materials and must keep the subject turquoise separated in such a way that it is readily discernible and separable from other materials.

3. A hearing on Plaintiffs' Application for Preliminary Injunction **(Doc. 49)** is set for **Wednesday, June 9, 2021** at **9:00 a.m.** via Zoom videoconferencing.

4. Defendants must appear and show cause, if any, why Plaintiffs' request for a preliminary injunction should not be granted.

**IT IS SO ORDERED.**

                                        **KEA W. RIGGS**
                                        **UNITED STATES DISTRICT JUDGE**