# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

PAUL SUGAR, JR. *et al.*,

    Plaintiffs,

v.                                                             No. 20-cv-00331-KWR-LF

DAVID TACKETT *et al.*,

    Defendants.

## ORDER DENYING APPLICATION FOR PRELIMINARY INJUNCTION

**THIS MATTER** comes before the Court on Plaintiffs' Application for Temporary Restraining Order and Preliminary Injunction **(Doc. 49)**, filed on May 19, 2021. On May 26, 2021, the Court issued a temporary restraining order ("TRO") and set a hearing on Plaintiffs' Application for Preliminary Injunction ("Application") for June 9, 2021. **Doc. 51.** On that date, the Court held a hearing by Zoom at which Plaintiffs appeared through counsel and Defendant David Tackett ("Mr. Tackett") appeared *pro se*. At the conclusion of the hearing, the Court extended the TRO for an additional 14 days. **Doc. 54.**

After reviewing the record and the applicable law, the Court finds that Plaintiffs have failed to meet their burden of establishing their entitlement to a preliminary injunction and **WILL DENY** the Application.

## BACKGROUND

This case involves claims for breach of contract, breach of the duty of good faith and fair dealing, misrepresentation, fraud, conversion, recission, and unjust enrichment arising from a transaction over 11,300 pounds of No. 8 turquoise that Plaintiffs allege they own and that Defendants wrongfully dispossessed them of in July 2017. *See* **Doc. 1.** In April 2020 when

Plaintiffs filed the instant lawsuit, the No. 8 turquoise at issue was the subject of a stipulated preliminary injunction entered by the United States District Court for the District of Nevada in August 2019 in a case pending in that court. *See* **Doc. 1 at ¶ 36; Doc. 33 at 2 (Stipulation #4); Doc. 49-7.** The stipulated preliminary injunction provided that Mr. Tackett "shall not dispossess any of the No. 8 Turquoise . . . in dispute"—including "the Number 8 Turquoise acquired by . . . David Tackett from Paul Sugar, Sr. and/or Paul Sugar, Jr."—"until further order of this Court." **Doc. 49-7 at 2, 3.** Plaintiffs learned in early April 2021 that the stipulated preliminary injunction in the Nevada case "had been dissolved as part of a judgment against David Tackett." **Doc. 49-4 at ¶ 6.**

On April 12, 2021, Plaintiffs and Mr. Tackett reached a settlement agreement, subject to the condition that Plaintiffs accept the turquoise, which they were to be given an opportunity to inspect. **Doc. 44.** The deadline for the parties to arrange for inspection of the turquoise and finalize their settlement agreement was May 14, 2021. *Id.* On May 14, the parties notified the Court that they "have been unable to agree on the written terms of the tentative settlement agreement and release that was to be drafted following the settlement conference." **Doc. 46 at 1.**

Within 24 hours of settlement talks ending, Mr. Tackett entered into a sale and purchase agreement with another party for the subject turquoise. **Preliminary Injunction Hearing, June 9, 2021, Tr. 8:12–16, 11:16–20.**[1] According to Mr. Tackett, he had approached the buyer months earlier to discuss a possible transaction and only accepted the buyer's offer to purchase the turquoise after the settlement agreement with Plaintiffs fell through. *Id.* **11:20–25.** On May 18, 2021, Plaintiffs' counsel learned of the sale of the turquoise during a phone call with Mr. Tackett.

---

[1] This Order cites to the court reporter's unofficial transcript. All page and line citations are subject to change on the official, edited transcript.

2

**Doc. 49-4 at ¶ 4.** Mr. Tackett refused to disclose the name of the buyer or the location of the turquoise, citing a non-disclosure provision in the sales agreement.[2] *Id.*

The next day, Plaintiffs sought a TRO and applied for a preliminary injunction against Mr. Tackett, Defendant Steve Tackett, "and anyone working in concert with or under their direction" doing three things: (1) prohibiting them from "consummating the sale of any of the No. 8 turquoise that is the subject of this case," (2) requiring them to "keep all of the No. 8 turquoise that Defendants have taken from Plaintiffs separate and apart from any other No. 8 turquoise in their possession," and (3) requiring that "all proceeds from the sale of any No. 8 turquoise formerly in the Plaintiffs' possession[] be placed in the Court Registry until a final judgment is rendered in this matter." **Doc. 49 at 1.** The Court issued a TRO and set Plaintiffs' Application for a hearing. **Doc. 51.** At the hearing, Mr. Tackett testified that the turquoise is no longer in his possession, he has been paid in full under the agreement, and he does not know the current location of the turquoise. **Hr'g Tr. 10:18–19, 13:2–8, 18:19–22.**

### STANDARD

The purpose of preliminary injunctive relief is to "preserve the relative positions of the parties" until a hearing or trial on the merits can be held. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary remedy," and "the movant's right to relief must be clear and unequivocal." *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quotation marks and citation omitted). The movant bears the burden of showing "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary

---

[2] In accordance with the Court's order, Mr. Tackett provided the Sale and Purchase Agreement and the Confidentiality and Non-Disclosure Agreement to the Court for *in camera* review. The documents will be held under seal in the record.

injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Id.* (quotation marks and citation omitted).

"Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements will be considered." *DTC Energy Group, Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (brackets, quotation marks, and citation omitted). "What makes an injury 'irreparable' is the adequacy of, and the difficulty of calculating, a monetary remedy after a full trial." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 806 (10th Cir. 2019). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quotation marks and citation omitted). "Injury is generally not irreparable if compensatory relief would be adequate." *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986). The movant must "show not only that it is injured by the failure to issue the preliminary injunction, but also that damages are not adequate to compensate that injury." *Id.* Any relief must be narrowly tailored to prevent the specific harm identified. *See Citizen Band Potawatomi Indian Tribe of Okla. v. Okla. Tax Comm'n*, 969 F.2d 943, 948 (10th Cir. 1992) (stating that it is a "well-settled principle that an injunction must be narrowly tailored to remedy the harms shown").

## DISCUSSION

The Court addresses two preliminary matters before turning to the merits of Plaintiffs' request for a preliminary injunction. First, the Court finds that the only party with notice under Federal Rule of Civil Procedure 65(a)(1) is Mr. Tackett. As such, the Court considers Plaintiffs' request for preliminary injunctive relief only as it relates to Mr. Tackett. *See* Fed. R. Civ. P.

65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party."). Second, and relatedly, given Mr. Tackett's testimony at the hearing that the sale of the turquoise has been consummated, that the turquoise is no longer in his possession, and that he does not know the current location of the turquoise, the majority of the relief Plaintiffs seek—i.e., prohibitions against (1) commingling of the turquoise, (2) selling or transferring the turquoise, and (3) moving the turquoise from its current location—cannot, as a practical matter, be obtained through the issuance of a preliminary injunction against Mr. Tackett.[3] At this juncture, then, the narrow issue the Court must decide is whether Plaintiffs have demonstrated a clear and unequivocal entitlement to an injunction requiring Mr. Tackett to either remain in possession of the proceeds from the consummated sale of the turquoise or place the proceeds into the Court Registry.

To meet their burden, Plaintiffs must show, *inter alia*, that they will suffer irreparable harm without the requested relief. Plaintiffs argue that in the absence of either the turquoise itself or an injunction, "there is very little of value that could be used to satisfy any judgment in this case." **Hr'g Tr. 16:8–11.** The Court understands Plaintiffs to argue that the potential difficulty in collecting on a monetary award satisfies the irreparable harm requirement for obtaining preliminary injunctive relief.

In the Tenth Circuit, the "[d]ifficulty in collecting a damage judgment *may* support a claim of irreparable injury." *Tri-State*, 805 F.2d at 355 (emphasis added). In *Tri-State*, an electric power generation and transmission cooperative (Tri-State) sued to enjoin one of its member distribution

---

[3] Notably, the record indicates that Plaintiffs have known since at least December 2020 that the location of the turquoise is unknown to them. *See* **Doc. 33 at 10** (indicating that the only specific topic on which discovery is needed is "[t]he current location of Plaintiffs' No. 8 Turquoise."). Moreover, Plaintiffs knew as of early April 2021 that the stipulated preliminary injunction in the Nevada case had been dissolved. *See* **Doc. 49-4 at ¶ 6.** Indeed, it appears that the stipulated preliminary injunction was dissolved in October 2020. *See* **Doc. 49-8 at 1–2.** Despite the foregoing, Plaintiffs did not choose to seek preliminary injunctive relief until after Mr. Tackett informed them that he had sold the turquoise, which occurred after settlement discussions fell through. Any limitations on the Court's ability to fashion meaningful preliminary injunctive relief is a problem of Plaintiffs' own making.

cooperatives (Shoshone) from completing a sale of its assets to another company (Pacific). *See id.* at 352–54. Tri-State argued that it would suffer irreparable injury if the sale was allowed to be completed not only because it "may not be able to collect a judgment" from Shoshone—which planned to distribute the proceeds of the sale to its constituent members—but also because the sale would immediately jeopardize Tri-State's viability. *Id.* at 354, 355–56. Regarding collection, Shoshone argued that because Pacific had agreed to indemnify Shoshone, Tri-State would be able to collect damages from Pacific. The Tenth Circuit disagreed, concluding that in light of a recent Wyoming Supreme Court decision regarding indemnification, Tri-State "may have difficulty collecting a judgment" from Pacific, which would cause irreparable harm to Tri-State. *Id.* Importantly, the *Tri-State* court did not base its finding of irreparable harm solely on Tri-State's possible difficulty in collecting on a money judgment. Equally if not more important was the fact that Tri-State made a showing that in the absence of a preliminary injunction, it would be unable to repay its debts, would be forced into bankruptcy, and would likely collapse. *See id.* Indeed, the United States, in an amicus brief, claimed that the viability of not only Tri-State but also the country's entire rural electrical supply system would be threatened by the sale. *See id.* at 356. Noting "the complexity of the interrelations" in the case, the Tenth Circuit was satisfied that Tri-State had demonstrated it would suffer irreparable harm without an injunction. *Id.*

This case is easily distinguishable from *Tri-State*. First, there is nothing particularly complex about the interrelations at issue. Plaintiffs and Mr. Tackett have a relationship dating back many years that centers on a single transaction and dispute over discrete personal property. Their dealings do not implicate interests in essential infrastructure and services such as those at issue in *Tri-State*. Second, Plaintiffs have never alleged that they have a business interest in the turquoise, meaning that, unlike in *Tri-State*, there is no basis for finding that irreparable harm exists based

on an injury (e.g., dissolution of the business itself) for which damages would be inadequate or difficult to calculate. Finally, Plaintiffs' contention that irreparable harm exists because of the potential difficulty of being able to collect on a judgment is purely speculative. The only evidence Plaintiffs have submitted that even arguably supports their claim that they will suffer irreparable harm if Mr. Tackett is not ordered to remain in possession of or place in the Court Registry the proceeds of the sale is a filing from the Nevada case in which Mr. Tackett states that he has "very little income" and "had to move out of [his] old business location as [he is] unable to afford it." **Doc. 49 at 6–7; Doc. 49-6 at 3, 5–6.** Mr. Tackett's statements were made in response to a motion to compel discovery in aid of execution of judgments filed by the prevailing party in that case and are insufficient to show that there exists a clear, great, and actual threat that Plaintiffs will be unable to collect on a money judgment should one issue against Mr. Tackett in this case. At this point, any threat presented by a future inability to collect damages is merely theoretical, which is insufficient to constitute an irreparable harm. *See Heideman*, 348 F.3d at 1189.

Because Plaintiffs have failed to demonstrate that they will suffer irreparable harm in the absence of a preliminary injunction, the Court concludes that the requirements for issuing an injunction have not been met. *See Colo. v. U.S. Envtl. Prot. Agency*, 989 F.3d 874, 890 (10th Cir. 2020) (explaining that the failure to show a lack of irreparable injury is "dispositive" and stating that "[w]hen the failure to satisfy one factor is dispositive, a court need not consider the other factors").

**IT IS THEREFORE ORDERED THAT** Plaintiffs' Application for Preliminary Injunction, **Doc. 49**, is **DENIED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**

7