## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

PAUL SUGAR, JR. *et al.*,

     Plaintiffs,

v.                                    No. 1:20-cv-00331-KWR-LF

DAVID TACKETT *et al.*,

     Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on (1) Plaintiffs' Motion for Entry of Default Judgment Against Defendant Steve Tackett ("Motion for Default Judgment"), **Doc. 56**, and (2) Plaintiffs' Motion to Strike Defendant Steve Tackett's Response to Plaintiff's [sic] Motion for Entry [of] Default Judgment Against Defendant Steve Tackett ("Motion to Strike"), **Doc. 65**. For the reasons stated herein, the Court will (1) **DENY** the Motion to Strike, (2) **DENY** the Motion for Default Judgment, (3) **SET ASIDE** the Clerk's Entry of Default against Steve Tackett **(Doc. 28)**, and (4) **DISMISS WITHOUT PREJUDICE** all claims brought against Steve Tackett for failure to timely serve process.

### BACKGROUND

Plaintiffs filed the instant lawsuit in April 2020, bringing claims against three parties—David Tackett, No. 8 Mine LLC, of which David Tackett is the sole member, and David Tackett's father, Steve Tackett—for breach of contract, breach of the duty of good faith and fair dealing, misrepresentation, fraud, conversion, recission, and unjust enrichment. *See* **Doc. 1.** Plaintiffs' claims arise from a transaction over 11,300 pounds of No. 8 turquoise that Plaintiffs allege they own and that they further allege Defendants wrongfully dispossessed them of in July 2017. *See id.*

Plaintiffs served No. 8 Mine LLC through its registered agent on April 16, 2020 and personally served David Tackett, who is a resident of Flagstaff, Arizona, on April 18, 2020. *See* **Docs. 3, 4.** After initially failing to appear and having default entered against them, David Tackett and No. 8 Mine LLC appeared through counsel and successfully moved to set aside the Clerk's Entry of Default. *See* **Docs. 5, 6, 8, 13, 20.** David Tackett filed an Answer to the Complaint on August 24, 2020 and is actively defending against Plaintiffs' claims.[1] *See* **Doc. 21.** On No. 8 Mine LLC's motion, the Court dismissed it from the case, concluding that the Court lacks personal jurisdiction over it. *See* **Docs. 22, 30.**

Regarding service of Steve Tackett, Plaintiffs attempted personal service upon him five times between April 16 and April 22, 2020 at a residential address in Scottsdale, Arizona that their process server believed to be "[t]he best home address" for Steve Tackett. *See* **Doc. 17 at 4; Doc. 65-4.** When personal service failed, Plaintiffs use the services of a commercial courier service (FedEx) to attempt delivery of the summons and complaint to the same address. *See* **Doc. 17 at 6–10.** When that method also failed, Plaintiffs sought an extension of time for service, which the Court granted. *See* **Docs. 17, 18.** Thereafter, Plaintiffs again attempted personal service five times at the same residential address in Scottsdale. *See* **Doc. 65-2.** When personal service at that address again failed, Plaintiffs sent a copy of the summons and the complaint via certified mail, return receipt requested, to an address that the process server identified as one of four "Private Mail Boxes" associated with Steve Tackett. *See* **Doc. 24; Doc. 65-4.** When Steve Tackett failed to answer or otherwise respond within the time allowed, Plaintiffs requested an entry of default against him. *See* **Doc. 27.** On September 24, 2020, a Clerk's Entry of Default against Steve Tackett was entered. *See* **Doc. 28.**

---

[1] David Tackett has been proceeding *pro se* since December 18, 2020. *See* **Docs. 34, 35.**

Plaintiffs and David Tackett proceeded with discovery and, at a settlement conference in April 2021, tentatively reached a settlement agreement. *See* **Docs. 33, 40–44.** In mid-May, however, they notified the Court that their settlement agreement fell through. **Doc. 46 at 1.** Litigation between Plaintiffs and David Tackett thus continues. On July 15, 2021, Plaintiffs filed a motion for partial summary judgment on their conversion and unjust enrichment claims.[2] *See* **Doc. 70.**

About one month before filing their motion for partial summary judgment, Plaintiffs filed their Motion for Default Judgment, seeking entry of a default judgment against Steve Tackett in the amount of $560,000.00.[3] *See* **Doc. 56.** After Steve Tackett filed a response in opposition to the Motion for Default Judgment, *see* **Doc. 63**, Plaintiffs moved to strike the response for failure to comply with Federal Rule of Civil Procedure 11(a)'s signature requirement. *See* **Doc. 65.** The Motion for Default Judgment and Motion to Strike are fully briefed and ready for decision.

## DISCUSSION

### I.  Motion to Strike

Federal Rule of Civil Procedure 11 requires "[e]very pleading, written motion, and other paper" to be signed by either an attorney of record "or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). The Rule further requires that "[t]he paper must state the signer's address, e-mail address, and telephone number." *Id.* If a paper is "unsigned[,]" the court

---

[2] Plaintiffs' conversion and unjust enrichment claims—Counts V and VII, respectively, of the Complaint—are asserted against "Defendants." *See* **Doc. 1 at 7–8.** In their motion for partial summary judgment, Plaintiffs request entry of summary judgment against only Defendant David Tackett. *See* **Doc. 70 at 1.**

[3] The amount sought is based on Plaintiffs' allegation that Defendants, specifically David Tackett, promised them $560,000.00 in exchange for their turquoise. *See* **Doc. 1 at ¶ 21; Doc. 56 at 3–4.** Although the Court denies the Motion based on Plaintiffs' failure to establish valid service, an alternative basis for denial of the Motion is that the relief Plaintiffs seek from Steve Tackett is identical to the relief they seek from David Tackett, who is actively defending against Plaintiffs' claims. *See Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 147 (10th Cir. 1985) (explaining that "when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against him until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted" (quotation marks and citation omitted)).

"must strike" it "unless the omission is promptly corrected after being called to the . . . party's attention." *Id.*

Steve Tackett hand-signed his response to the Motion for Default Judgment but failed to include in his signature block his address, e-mail address, and telephone number. *See* **Doc. 63 at 4.** Plaintiffs move to strike Steve Tackett's response to the Motion for Default Judgment because of this omission. *See* **Doc. 65.** They argue that Steve Tackett's failure to comply with Rule 11(a)'s technical requirement not only demonstrates "a continuation of [his] deliberate and intentional strategy of avoiding service in this case" but also leaves the Court unable to provide him with notice of the proceedings in this matter. *Id.* **at 3, 4–5.**

Steve Tackett filed a response to the Motion to Strike in which he provided a current mailing address and phone number and explained that he does not have a personal e-mail address. *See* **Doc. 72.** The address he provided is the same address of record listed for David Tackett. *Compare id.* **at 2** *with* **Doc. 35 at 2.** Plaintiffs contend that "[t]he address provided by Steve Tackett is nothing but a ruse to avoid giving away his location or making it possible for Plaintiffs and the Court to provide him with pleadings and other documents in this case[,]" and they argue that the Court should grant the Motion to Strike because Steve Tackett "failed to provide the Court and Plaintiffs with a reliable address where he can timely receive correspondence[.]" **Doc. 73 at 2–3.**

Because the Court finds that (1) Steve Tackett promptly corrected the omission, (2) Plaintiffs fail to substantiate their conclusory contention that the address provided by Steve Tackett is unreliable, and (3) Plaintiffs provide no other basis for striking the response, the Court will deny the Motion to Strike.[4] *See* Fed. R. Civ. P. 1 (providing that the Federal Rules of Civil Procedures

---

[4] The Court notes that although it has considered Steve Tackett's response to the Motion for Default Judgment, it does not rely on anything contained therein in disposing of that motion. As the Court's ensuing discussion demonstrates,

Case 1:20-cv-00331-KWR-LF   Document 77   Filed 08/02/21   Page 5 of 16

"should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"); *cf. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts.").

## II.   Motion for Default Judgment

### A.  Standard

"The preferred disposition of any case is upon its merits and not by default judgment." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970). However, the Federal Rules of Civil Procedure provide a means by which a party may seek judgment against a party who has failed to answer a complaint or otherwise defend in an action. *See* Fed. R. Civ. P. 55. Rule 55 mandates a two-step process for entering a default judgment. First, a party must obtain a Clerk's entry of default. Second, the party must request a default judgment. *See Gomes*, 420 F.2d at 1366 (citing Fed. R. Civ. P. 55(a) & (b)). Whether to enter default judgment is a decision committed to the district court's sound discretion. *Dennis Garber & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997).

Courts must make several threshold determinations when presented with a motion for default judgment, including whether service of process was adequate. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). "[S]ervice of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party

---

Plaintiffs' Motion for Default Judgment fails on its own, irrespective of any arguments made or information contained in Steve Tackett's response.

served." *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir. 1992); *see BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1556 (2017) (explaining that "a basis for service of a summons on the defendant is prerequisite to the exercise of personal jurisdiction"). Default judgment should not be entered unless the record supports a finding that the party against whom judgment would be entered was properly served with the summons and the complaint. *Cf. Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983) (per curiam) (vacating the district court's denial of the defendant's motion to vacate the default judgment where the district court, *inter alia*, failed to determine whether the defendant was properly served with the complaint); *Edmonds v. Martinez*, 215 P.3d 62, 66 (N.M. Ct. App. 2009) (noting that "a judgment entered without notice or service is constitutionally infirm" and reversing the district court's finding of contempt and award of attorney fees against a defendant for failure to timely comply with a writ of mandamus where the reviewing court held that service of the writ did not comply with the applicable state court rule governing service of process (quotation marks and citation omitted)). "The plaintiff bears the burden of establishing the validity of service." *Exec. Consulting, Inc. v. Kilmer*, 931 F. Supp. 2d 1139, 1140 (D.N.M. 2013).

### B.  Plaintiffs have not demonstrated that service was valid.

According to Plaintiffs, Steve Tackett was "served with a copy of the Summons and Complaint in this case by certified mail, return receipt requested on August 27, 2020." **Doc. 56 at ¶ 2.** As evidence that service was valid, Plaintiffs point to the Proof of Service they filed in August 2020. *See id.* **(citing Doc. 24).** The Proof of Service indicates that the method of service used was "Other (*specify*): The Summons and Complaint were served on Defendant [Steve Tackett] by certified mail, return receipt requested." **Doc. 24 at 2.** The address to which Plaintiffs mailed the summons and complaint was 15029 N. Thompson Peak Pkwy, #B111-637, Scottsdale, AZ 85260,

which is the location of a United Parcel Service ("UPS") Store that offers, among other things, mailbox services.[5] **Doc. 24 at 3.** To the Proof of Service, Plaintiffs attached a copy of the United States Postal Service ("USPS") return receipt card. **Doc. 24 at 3.** In the respective spaces on the card where the recipient is to first sign and then print his or her name to acknowledge receipt, there are partially legible markings consisting of a combination of letters and numbers, which, in both places, appear to be "C/U 6079." *Id.* The only other document attached to the Proof of Service form is a "USPS Tracking" sheet that states, "Your item was delivered *to an individual* at the address at 2:59 pm on August 27, 2020 in Scottsdale, AZ 85260" and includes a notation that the package was "Delivered, *Left with Individual*[.]" *Id.* **at 4 (emphases added).** For the following reasons, the Court concludes that Plaintiffs have failed to meet their burden of demonstrating that service upon Steve Tackett was valid.

Under Federal Rule of Civil Procedure 4, "an individual . . . may be served . . . by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1). Alternatively, service may be accomplished by either:

> (A)    delivering a copy of the summons and of the complaint to the individual personally;
> (B)    leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C)    delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2). None of the alternative methods is at issue. The question, therefore, is whether either Arizona or New Mexico law allows for service of process on Steve Tackett as effected by Plaintiffs, i.e., via certified mail, return receipt signed by an unidentified person.

---

[5] *See* https://locations.theupsstore.com/az/scottsdale/15029-n-thompson-peak-pkwy (last visited July 26, 2021). The Court takes judicial notice of this adjudicatory fact.

Arizona does not permissively allow for service of process by mail. *See* Ariz. R. Civ. P. 4.1(d) (providing that an individual may be served in one of three ways: by (1) delivering a copy of the summons and the pleading to the individual personally, (2) leaving the documents at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, or (3) delivering the documents to an agent authorized by appointment or by law to receive service of process). Although service by mail is an alternative means of service, it is only available upon motion and approval of the court, which was not obtained in this case. *See* Ariz. R. Civ. P. 4.1(k); *Postal Instant Press, Inc. v. Corral Restaurants, Inc.*, 925 P.2d 260, 262 (Ariz. 1996) (en banc) ("Service by mail is an alternative form of service, available in lieu of personal service."). The Court thus focuses on whether service was made in accordance with New Mexico law.

In New Mexico, process must "be served in a manner reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend." NMRA Rule 1-004(E)(1). Service upon an individual may be made "by mail[,]" NMRA Rule 1-004(F)(1)(b), and, indeed, New Mexico allows for "a much-simplified method of service by mail[,]" one that neither requires that the defendant voluntarily choose to accept service nor mandates that service "be at the home address or usual place of abode of the defendant[.]" NMRA Rule 1-004 comm. commentary. However, the mere act of sending a summons and a complaint by certified mail and requesting that the receiving party sign a receipt is not sufficient to effect constitutionally adequate service. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314–315 (1950) (stating that adequate notice of a lawsuit is "[a]n elementary and fundamental requirement of due process" and that "when notice is a person's due, process which is a mere gesture is not due process"). Rule 1-004 itself mandates that

service by mail must comply with two requirements: (1) that the envelope containing the summons and the complaint is "addressed to the named defendant[,]" *and* (2) that "the defendant or a person authorized by appointment, by law or by this rule to accept service of process upon the defendant signs a receipt for the envelope or package containing the summons and complaint[.]" NMRA Rule 1-004(E)(3). These requirements "derive from constitutional due process requirements" and "must be satisfied to validly serve a person[.]" NMRA Rule 1-004 comm. commentary.

Clearly, Plaintiffs did not satisfy the second of Rule 1-004(E)(3)'s prerequisites to validly effecting service by mail. Nothing in the record even arguably supports a finding that either Steve Tackett or a person appointed or legally authorized to accept *service of process* on his behalf signed the receipt for the package that was delivered to The UPS Store.[6] The markings on the signature line and in the space for the recipient to print his or her name are meaningless on the current record. The Court has no way of knowing what the notation "C/U 6079"—assuming that is, indeed, what it says—is intended to signify or whom it purports to identify. The USPS Tracking sheet indicating that the package was "delivered to an individual at the address" is equally uninformative and unhelpful. To what "individual" was the package delivered? The specific answer to that question matters and is dispositive of whether service by mail was accomplished in conformance with New Mexico law. Particularly given that the address to which the summons and the complaint were mailed is a commercial shipping and receiving business that provides "package acceptance" as

---

[6] Plaintiffs' argument that The UPS Store was an authorized agent for service of process is without merit. The fact that The UPS Store was authorized to accept delivery of *mail*—including certified mail—for Steve Tackett does not mean that it was authorized to accept service of process. Plaintiffs cite no authority for the proposition that a customer's agreement to appoint The UPS Store as "authorized agent for *receipt of mail*" encompasses an authorization to accept service of legal process. **Doc. 67 at 4 (emphasis added).** Indeed, persuasive authority supports the opposite conclusion. *See Exec. Consulting, Inc. v. Kilmer*, 931 F. Supp. 2d 1139, 1141 (D.N.M. 2013) ("Although the New Mexico courts have not addressed the specific issue of whether authority to accept mail constitutes authority to accept service of process, this Court finds persuasive those decisions from other jurisdictions with analogous service statutes holding that authority to accept mail for a defendant does not confer authority to accept service on that defendant's behalf.").

part of its mailbox service[7], something more than a copy of the return receipt showing that the package was delivered and was signed for by a person of unknown identity is needed to satisfy Rule 1-004(E)(3)'s signature requirement. In the absence of evidence that supports a finding that Steve Tackett, or someone legally authorized to accept service on his behalf, was, in fact, present at The UPS Store at the time of delivery and signed for the package, the Court concludes that valid service upon Steve Tackett by mail was not accomplished.

Because Plaintiffs have failed to meet their burden of demonstrating that service upon Steve Tackett was properly effected, the Court concludes that it is without authority to enter a judgment against him and will deny the Motion for Default Judgment.[8] The Court also concludes that there exists good cause to set aside the Clerk's Entry of Default against Steve Tackett. *See* Fed. R. Civ. P. 55(c) (providing that "[t]he court may set aside an entry of default for good cause"); *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009) (unpublished) (holding that the district court acted within its discretion in setting aside an entry of default where the party against whom default was entered had not been properly served).

### III.   Plaintiffs' Request for Additional Time for Service

Plaintiffs request that in the event the Court concludes, as it has, that service was not proper, they be allowed to re-serve Steve Tackett. *See* **Doc. 67 at 8.** Under Federal Rule of Civil Procedure 4, the Court must either "dismiss the action without prejudice" against any defendant not served within 90 days after the complaint is filed or "order that service be made within a specified time." Fed. R. Civ. P. 4(m). If the plaintiff shows good cause why proper service was not effected within

---

[7] *See* https://locations.theupsstore.com/az/scottsdale/15029-n-thompson-peak-pkwy/mailbox-services (last visited July 26, 2021).

[8] It is of no moment that Steve Tackett responded to the Motion, evincing that he has actual notice of the lawsuit. *See Meyers v. Pfizer, Inc.*, 581 F. App'x 708, 711 (10th Cir. 2014) (unpublished) (stating that "a default judgment cannot be based on actual notice when service is defective" (citing *Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 802 (10th Cir. 2008))).

the permissible period, the court must grant an extension. *See id.* (providing that "if the plaintiff shows good cause of the failure, the court must extend the time for service for an appropriate period"). If, however, there is no showing of good cause, the court retains discretion to dismiss without prejudice or grant an extension. *See Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995) ("If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted. At that point the district court may in its discretion either dismiss the case without prejudice or extend the time for service.").

### A. Plaintiffs have not shown good cause for their failure to properly serve Steve Tackett within the time allowed.

Although not clear, Plaintiffs appear to argue that Steve Tackett's efforts to avoid service constitute good cause supporting another extension of time for service. It is true that a defendant's avoidance of service may support a finding of good cause to extend the time to serve under Rule 4(m). *See Hendry v. Schneider*, 116 F.3d 446, 449 (10th Cir. 1997) (affirming the district court's conclusion that the plaintiff's attorney showed good cause for his inability to timely serve the defendant where the evidence of record supported the district court's finding that the defendant "was, in fact, avoiding service, with considerable success"). However, the Court is not persuaded that the record supports Plaintiffs' assertion that Steve Tackett "has worked diligently to avoid service in this case" and "gone to extraordinary lengths to avoid revealing his whereabouts." **Doc. 67 at 8.**

In support of this contention, Plaintiffs point to the affidavits of non-service from the two process servers they employed in 2020 to attempt to serve Steve Tackett. ***See* Docs. 65-2, 65-4.** One affidavit indicates that in April 2020, process server Craig Podgurski "[r]an multiple database and social media searches to find a physical address for Steve Lee Tackett" and identified "[t]he best home location" for Steve Tackett as 14805 N. 100th Pl., Scottsdale, AZ 85260 ("the 100th Pl.

11

address"). **Doc. 65-4.** Notably, Mr. Podgurski's affidavit does not explain how he determined, in the first instance, that the 100th Pl. address was the "best home location" for Steve Tackett, nor does any other evidence of record indicate why Plaintiffs continued to believe that Steve Tackett would be found at that address after numerous attempts failed.[9] Plaintiffs do not mention, but the record indicates, that Mr. Podgurski was the first process server who, in April 2020, unsuccessfully attempted service at the 100th Pl. address on five occasions. *See* **Doc. 17 at 5.** During his five attempts, Mr. Podgurski never saw or made in-person contact with Steve Tackett. *See id.* He never documented the presence of any vehicles or other indicia that might reasonably support the inference that Steve Tackett indeed resided and/or could be found at that location. No one ever answered the door, and the residence was "dark and quiet inside" during four of the five visits.[10] *Id.* Additionally, neighbors were "not able to confirm residency[.]" *Id.* Thus, even if Plaintiffs reasonably relied on Mr. Podgurski's initial belief that Steve Tackett could be found at the 100th Pl. address, the Court fails to see—and Plaintiffs fail to explain—how Plaintiffs' continued reliance on that belief and their continued lack of success serving Steve Tackett at that address supports the conclusion that Steve Tackett was intentionally avoiding service.

The second affidavit Plaintiffs rely on—that of process server Cheryl Anderson, who attempted service at the 100th Pl. address in July 2020—is also of no aid to Plaintiffs. During her five attempts, Ms. Anderson, like Mr. Podgurski, never observed any cars and never made contact with anyone at the residence. *See* **Doc. 65-2.** She did, during her third attempt, see "a package outside the door with [Steve Tackett's] name on it[,]" leading her to "verify that Steve Tackett is most likely the current resident[.]" *Id.* On her fourth attempt, she observed that the "package was

---

[9] In his response to the Motion to Strike, Steve Tackett represents that he has "not set foot in" or had an ownership interest in the 100th Pl. residence since 2008. **Doc. 72 at 2.** In their reply, Plaintiffs do not challenge this assertion, much less proffer evidence to dispute it. *See* **Doc. 73.**

[10] During his first attempt, Mr. Podgurski could "hear some kind of drill, saw or vacuum inside." *Id.*

gone from the door[.]" *Id.* Plaintiffs appear to believe that the presence and disappearance of a package bearing Steve Tackett's name supports finding not only that Steve Tackett resided at the 100th Pl. address but also that he was avoiding service. On the record before it, the Court cannot agree. Neither Ms. Anderson's affidavit nor anything else in the record contains any description of the package (e.g., the return address indicating the sender, or labeling or some other markings suggesting the package's contents) or any other information that lends support to Ms. Anderson's speculative conclusion that "Steve Tackett is most likely the current resident[.]" For all the Court knows, the undescribed package may have been sent by Plaintiffs, who were convinced that Steve Tackett resided and received mail at that address. Indeed, one of Plaintiffs' recent filings indicates that they have, at least once, mailed something to the 100th Pl. address on the same day they hired a process server to attempt in-person service at that location. *See* **Docs. 59-3, 59-6.** There being no objective, reliable indicia in the record that Steve Tackett was, in fact, ever found at the 100th Pl. address, the fact that numerous attempts to serve him at that address proved unsuccessful does not, without more, support the inference that he was evading service.

"The 'good cause' provision of Rule 4([m]) should be read narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule." *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1438 (10th Cir. 1994) (brackets, quotation marks, and citation omitted).[11] Counsel's misinterpretation of the rules governing service of process is not "good cause for failure to serve process." *Id.* at 1439. On the record before it, the Court cannot say that Plaintiffs were "meticulous in their efforts" to serve Steve Tackett. Indeed, with the exception of Plaintiffs' first attempt at in-person service at the 100th Pl. address, all of Plaintiffs' other

---

[11] *Despain* construed a prior version of Rule 4 in which the provision governing the time limit for service was contained in subsection (j). When Rule 4 was amended in 1993, former Rule 4(j) became codified at Rule 4(m). *Compare* Fed. R. Civ. P. Rule 4(j) (1987) *with* Fed. R. Civ. P. Rule 4(m) (1993).

attempts at service have the appearance of mere gestures and/or reflect counsel's misinterpretation of what is required to serve process. To the extent Plaintiffs had reason to believe they would achieve a different result the subsequent times they directed service to the 100th Pl. address, those reasons have not been provided to the Court, leaving the Court unable to find that Plaintiffs' efforts were reasonable, much less meticulous.[12]

Because Plaintiffs have failed to demonstrate that Steve Tackett has been avoiding service, and because the Court finds that Plaintiffs have not been meticulous in their efforts to effect service, the Court concludes that good cause does not exist to support a mandatory extension of time for service.

### B. The Court will dismiss the claims against Steve Tackett.

Generally, service should be quashed and the plaintiff should be given an opportunity to effect service if there is a reasonable prospect that the defendant can be properly served with process, i.e., if the insufficient service is curable. *See Pell v. Azar Nut Co., Inc.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983) (noting that "when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant"). "The court nevertheless retains broad discretion to dismiss the action if it appears unlikely that proper service can or will be instituted." *Id.*

In requesting an extension of time to serve Steve Tackett, Plaintiffs do nothing more than cite the foregoing authority and state that they "should be permitted the opportunity to complete

---

[12] Notably, at no point did Plaintiffs attempt to request a waiver of service from Steve Tackett, *see* Fed. R. Civ. P. 4(d), nor have they moved the Court for an order authorizing service by an alternative method. *See* NMRA 1-004(J) (providing that courts may order alternative methods of service "[u]pon motion . . . and showing by affidavit that service cannot reasonably be made as provided by this rule"); *see also* Ariz. R. Civ. P. 4.1(k)(1), (*l*) (providing that courts may, on motion, order an alternative means of service, including service by mail and/or publication, where the moving party shows that other means of service "are impracticable," the moving party "despite reasonably diligent efforts, has been unable to ascertain the person's current address[,]" or that the person to be served "has intentionally avoided service of process").

service." **Doc. 67 at 8.** Plaintiffs offer no indication, however, that they can or will institute proper service upon Steve Tackett in a timely manner. Indeed, everything in the record supports the opposite conclusion: that it is quite unlikely that Plaintiffs can or will institute, let alone effect, proper service on Steve Tackett.

Despite numerous failed attempts at in-person service at the 100th Pl. address, Plaintiffs, quite bafflingly, continue to attempt to serve Steve Tackett at that location. Just two months ago, on May 27, 2021, Plaintiffs directed a third process server to the 100th Pl. address to serve Steve Tackett with a subpoena for his deposition. **Doc. 59-3.** That same day, Plaintiffs mailed the subpoena via certified mail to both the 100th Pl. address and The UPS Store mailbox. ***See* Doc. 59 at 2; Doc. 59-6.** Unsurprisingly, at least to the Court, all the attempts failed. ***See* Doc. 59 at 2; Doc. 59-3 at 2; Doc. 59-6.**[13]

As previously noted, Plaintiffs are convinced that Steve Tackett is intentionally avoiding service, which appears to have, at least in part, informed their approach to service. The problem for Plaintiffs is that, even assuming *arguendo* that the record supports finding that Steve Tackett has intentionally evaded service, a defendant's active avoidance of service does not relieve a plaintiff of his burden to serve process. Both the New Mexico and Arizona rules of civil procedure address, with specificity, what is to happen when a defendant cannot be found and personally served. *See* NMRA Rule 1-004(J), (K); Ariz. R. Civ. P. 4.1(k), (*l*). For reasons unknown to the Court, Plaintiffs have not availed themselves of the opportunity to seek approval to employ an alternative means of service and instead continue to use the same methods they have previously tried and that have repeatedly failed. Because there is nothing before the Court indicating that

---

[13] The process server's declaration of non-service indicates that he attempted service at the 100th Pl. address six times in early June 2021 and "never received an answer at the front door nor did [he] ever see any vehicles present or lights on at the . . . residence." **Doc. 59-3 at 2.**

Plaintiffs will institute and effect constitutionally adequate service if granted an extension of time for service, the Court concludes that dismissal without prejudice is proper.

In closing, it bears noting that this lawsuit was filed more than 15 months ago; that Plaintiffs waited 263 days after entry of default against Steve Tackett to move for a default judgment; that discovery in this case is set to terminate in less than one month; and that Plaintiffs have moved for partial summary judgment on claims that they also assert against Steve Tackett. Given the current posture of this case, Plaintiffs' failure to diligently pursue their claims against Steve Tackett, and the lack of anything suggesting that Plaintiffs will timely effect service on Steve Tackett if given the opportunity to do so, dismissal seems particularly warranted under the circumstances.

## CONCLUSION

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiffs' Motion to Strike (**Doc. 65**) is **DENIED**.

2. Plaintiffs' Motion for Entry of Default Judgment Against Defendant Steve Tackett (**Doc. 56**) is **DENIED**.

3. The Clerk's Entry of Default against Steve Tackett (**Doc. 28**) is **SET ASIDE**.

4. All claims brought against Steve Tackett in Plaintiffs' Complaint for Breach of Contract, Breach of the Duty of Good Faith and Fair Dealing, Misrepresentation, Fraud, Conversion, Rescission, and Unjust Enrichment (**Doc. 1**) are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**