## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PAUL SUGAR, JR et al.,

      Plaintiffs,

      vs.                                No. 1:20-cv-00331-KWR-LF

DAVID TACKETT, pro se

      Defendant.

## MEMORANDUM OPINION AND ORDER

The terms of an oral agreement concerning No. 8 turquoise is at the center of the dispute between Plaintiffs Paul Sugar Jr. et al. and Defendant David Tackett, who appears pro se. Before the Court is Plaintiffs' Motion for Summary Judgment on Claims for Conversion and Unjust Enrichment (Doc. 70) ("Motion"). In their Motion, Plaintiffs allege that the undisputed material facts establish that Defendant wrongfully sold Plaintiffs' No. 8 turquoise and was thereby enriched. The Motion is fully briefed.[1] After considering the briefing and the record, the Court will **DENY** Plaintiffs' Motion.

## I. PROCEDURAL HISTORY

On April 13, 2020, Plaintiffs filed their Complaint in this Court, which alleged subject matter jurisdiction based on diversity. The Complaint alleges seven claims against Defendant: Breach of Contract, Breach of the Duty of Good Faith and Fair Dealing, Misrepresentation, Fraud, Conversion, Rescission, and Unjust Enrichment. Doc. 1. A year later, at an April 12, 2021 settlement conference, the parties came to a preliminary agreement to resolve the dispute. *See*

---

[1] *See* Defendant David Tackett's Response to Plaintiffs' Motion for Summary Judgment on Claims for Conversion and Unjust Enrichment, Doc. 76 ("Response"); Plaintiffs' Reply in Support of Motion for Summary Judgment on Claim for Conversion and Unjust Enrichment, Doc. 78 ("Reply").

Clerk's Min. Doc. 44. The agreement was short-lived, and on May 14, 2021, the parties filed a joint motion asking the Court to reinstate scheduling order deadlines, (Doc 46), which the Court did (Doc. 47).

After learning that Defendant may have sold the No. 8 turquoise, on May 19, 2021, Plaintiffs asked the Court for a temporary restraining order and preliminary injunction that would mandate that Defendant[2] (1) segregate the turquoise at issue, (2) refrain from selling it and (3) turn over any funds acquired from its sale to the court registry until the dispute is resolved with a final judgment. *See* Plaintiffs' Application for Temporary Restraining Order and Preliminary Injunction, Doc. 49 at 1. The Court entered a temporary restraining order. Doc. 51.

On June 21, 2021, the Defendant filed two sealed documents: a sale and purchase agreement (Doc. 61) and a confidentiality and nondisclosure agreement (Doc. 62). On that same day, the Court found that Plaintiffs had failed to meet their burden of establishing their right to a preliminary injunction and denied the application. *See* Memorandum Opinion and Order, Doc. 60.

## II. LEGAL STANDARD

In this diversity case, Plaintiffs seek summary judgment on their conversion and unjust enrichment claims. "[I]n a federal diversity action, the district court applies state substantive law—those rights and remedies that bear upon the outcome of the suit—and federal procedural law—the processes or modes for enforcing those substantive rights and remedies." *Los Lobos Renewable Power, LLC v. Americulture, Inc*., 885 F.3d 659, 668 (10th Cir. 2018). This means that when considering a summary judgment motion, a federal judge "will look to [state law] to determine

---

[2] When the Motion was entered, Steve Tackett and No. 8 Mine, LLC were also defendants in the case. On August 12, 2020, Defendant No. 8 Mine, LLC moved the Court to dismiss it from the case, arguing that the Court did not have personal jurisdiction. Doc. 22. On November 5, 2020, the Court granted that motion. Doc. 30. After finding that Plaintiffs had failed to timely serve process on Mr. Steve Tackett, The Court dismissed, without prejudice, Steven Tackett from the case on August 2, 2021. *See* Memorandum Opinion and Order, Doc. 77.

what elements the plaintiffs must prove at trial to prevail on their claims" but "exclusively to federal law to determine whether plaintiffs have provided enough evidence on each of those elements to withstand summary judgment." *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1129 (10th Cir. 2009) (internal citations omitted). These events occurred in New Mexico, so New Mexico law applies.

A court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences in the light most favorable to the party opposing summary judgment. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1990). "Once the moving party has met its burden, the burden shifts back to the nonmoving party to show that there is a genuine issue of material fact." *Jensen v. Kimble*, 1 F.3d 1073, 1077 (10th Cir. 1993) (citing *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)). Disputes are genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and they are material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (further citation and internal quotation marks omitted). The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'" *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56). "A [defendant] 'cannot avoid summary judgment merely by presenting a scintilla of evidence to support [his] claim; [he] must proffer facts such that a reasonable jury could find in [his] favor.'" *Milne*, 575 F.3d at 1130 (quoting *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009) (further citation omitted)).

**III. UNDISPUTED FACTS**

To support their Motion, Plaintiffs submit declarations of facts, excerpts from depositions, and an authenticated transcript of a recording. In response, Defendant admits that there was an agreement concerning the No. 8 turquoise, but he disputes the terms, arguing that the No. 8 turquoise was collateral for a loan he made to Plaintiffs for a Florida property. To support his statement of facts, Defendant offers a series of text messages purportedly between him and Plaintiffs, and between Defendant and a third party, and copies of warranty deeds memorializing a sale of real estate in Florida. Response, Doc. 76 at 13-49. Additionally, Defendant references two federal cases, one from the District of Nevada, and one from the Northern District of Florida. Both cases refer to the No. 8 turquoise at issue here. *See id.* at 6.

Plaintiffs state that Defendant has not properly controverted any facts presented by Plaintiffs in the Motion because "[Defendant] fails to cite to 'particular parts of material in the record' and the '[e]xhibits attached to the Response [do not] create a disputed issue of fact because they are, variously unauthenticated, incomplete, or hearsay." Reply, Doc. 78 at 1. Rule 56 describes what constitutes admissible evidence in summary judgment motions. Admissible evidence includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motions only), admissions, interrogatory answers, or other materials . . .." The Court agrees with Plaintiffs that Defendant's proffered emails are inadmissible; they are unauthenticated, and Defendant has not demonstrated that they fall within a hearsay exception. However, the warranty deeds Defendant offered are admissible as they are "records of a document affecting an interest in property." *See* Fed. R. Evid. 803(14).

The warranty deeds concern a property in Florida, which at one time, was titled in Defendant's name, and was the subject of a dispute between Plaintiffs and a third party in the Northern District of Florida. In that case, Plaintiffs made claims based on their relationship with Defendant. A court may "take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand." *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.6 (10th Cir. 2007). The Court will *sua sponte* take judicial notice of the Florida case, and of the fact that Plaintiffs made certain claims in the Florida case, but the Court will not accept as true the substantive matter of the claims. *See also* Fed. R. Evid. 201 (stating "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it …can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). As for Plaintiffs' argument that Defendant does not specifically cite to "particular parts of materials in the record," (Response, Doc. 78 at 1), the Court finds that because Defendant appears pro se, he is entitled to some leeway. *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

Facts set forth in Defendant's Motion that are not specifically controverted by Plaintiff are deemed undisputed. *See* D.N.M. LR-CIV 56.1(b). The following facts are undisputed, or if disputed, are presented in the light most favorable to Defendant.

1.    Plaintiff Paul Sugar Sr. is a New Mexico resident.

2.    Plaintiff Paul Sugar Jr. is a Florida resident.

3.    Defendant David Tackett is an Arizona resident.

4.    Beginning in 2016, Plaintiffs purchased approximately 13,000 pounds of No 8 turquoise ore from Dan and Pam Harrington, who live in Nevada. Declaration of Paul Sugar, Jr. (Sugar Declaration) Doc. 49-3 ¶ 4.

5.      After Plaintiffs sifted and cleaned the ore and stabilized some of the turquoise, it weighed approximately 11,300 pounds. *Id.* ¶ 5.

6.      In 2017, David Tackett contacted Paul Sugar Jr. and expressed his interest in buying the Plaintiffs' No. 8 turquoise. *Id.* ¶ 6.

7.      On July 8, 2017, Defendant's father, Steve Tackett, took the No. 8 turquoise from Paul Sugar Sr.'s home in Moriarty, New Mexico to Flagstaff, Arizona. *Id.* ¶ 7.

8.      When the No. 8 turquoise was taken from their home, Plaintiffs believed they had reached an oral agreement with Defendant for the sale of the No. 8 turquoise. *Id.* ¶ 6.

9.      Defendant stored the Plaintiffs' No. 8 turquoise at a Bleeker's Boxes, a storage facility in Flagstaff, Arizona. *See id.* Doc. 49-2. The leasing contract is dated August 1, 2017. *Id.*

10.     Defendant rented the storage facility under the name "Paul Sugar." *Id.*

11.     Defendant signed the leasing contract but without Plaintiff Paul Sugar Jr.'s knowledge or consent. Doc. 49-3 ¶ 14.

12.     In an undated conversation, Defendant told third parties that he bought Plaintiff[3] a Florida property in return for the turquoise and other information. *See* Reply, Doc. 78-2 at 31 (transcription of recording between Defendant, Steve Tackett, and Pamela and Dan Harrison), *see also* Doc. 78-1 at 92:10-20, 94:8-13 (deposition of David Tackett authenticating transcription).

13.     On September 1, 2017, a parcel of real property described as Lot 9, Mariners Cove, in Okaloosa County, Florida, ("Florida Property") was conveyed by Warranty Deed to Plaintiff Paul Sugar Jr. and Kristin Tackett. The Deed was recorded in the official records

---

[3] In the transcription, Steve Tackett does not identify whether the house was purchased for Paul Sugar Sr. or Paul Sugar Jr.

of Okaloosa County, Florida at Book 3317, Page 2812 on September 14, 2017. *See* Response, Doc. 76 at 33.

14. On August 14, 2019, Defendant and Kristin Tackett, conveyed the Florida Property by Warranty Deed to CP1, LLC. On August 21, 2019, the Deed was recorded in the official records of Okaloosa County, Florida at Book 3414 at Page 4675. ¶2c. *Id.* at 35-36.

15. On November 1, 2019, CP1, LLC conveyed the Florida Property to CP Holdings by a Quitclaim Deed recorded in the public records of Okaloosa County, Florida at Book 3427, Page 4419-4420 on November 7, 2019. *Id.* 76 at 39-40.

16. CP Holding LLC brought an action for quiet title and ejectment against Plaintiff Paul Sugar Jr. and Kimberly Sugar in the United States District Court for the Northern District of Florida. *See* CP Holding LLC v. Sugar et al. 3:19-cv-04787-TMK-EMT. Doc. 1.

17. Plaintiff Paul Sugar Jr. and Kimberly Sugar asserted claims in the Property. On May 1, 2018, they filed a notice stating that they had an interest in the property through an agreement with Defendant. *See* 3:19-cv-04787-TMK-EMT. Doc. 1 at 20. Official Record of Okaloosa county at Book 3349, Page 4165 and Book 3349, Page 4166 (Doc. 46 ¶ 3.).

18. On December 23, 2019, Plaintiff, Paul Sugar, Jr. filed an answer and a counterclaim in the Florida case. The Counterclaim alleged that CP Holdings LLC could only succeed to the Property based on Defendant's interest in the Property and that Defendant's interest in the property had been conveyed to Plaintiff Paul Sugar Jr. and Kimberly Sugar. *See* 3:19-cv-04787-TMK-EMT. Doc. 10.  ¶¶ 104, 131

19. In a case in the United States District Court of the District of Nevada, Defendant admitted, as part of a stipulated preliminary injunction, that he had possession of Plaintiffs' No. 8 turquoise. No. 8 Mine LLC, v. The Eljen Group, LLC, Elven E. Jennings, Jack Elkins,

Frank Lente and Steve Harper 3:18-cv-00028-WGC, and Counterclaim, The Eljen Group, LLC et al. v. No. 8 Mine LLC, 3:18-cv-00104-WCG, Doc. 49-7 at 1-2. The preliminary injunction prohibited Defendant from selling "Number 8 Turquoise acquired by No. 8 Mine, LLC/David Tackett from Paul Sugar, Sr. and/or Paul Sugar Jr." *Id*. at 3.

20.    After settlement talks ended in the Nevada case, and the Nevada court dissolved the preliminary injunction, on May 14, 2021, Defendant entered into a sale and purchase agreement of the No. 8 turquoise with a third party. Doc. 61.

21.    On May 11, 2021, Defendant told Angelo J. Artuso, Plaintiff's counsel, that the No. 8 turquoise obtained from Plaintiff was still stored at Bleeker's Boxes. Doc. 49-4 ¶ 3.

22.    One week later, on May 18, 2021, Defendant told Mr. Artuso that he had sold the No. 8 turquoise obtained from Plaintiff to a third party and it was no longer at Bleeker's Boxes. *Id.* ¶ 4.

23.    On several occasions, over a period of months, Plaintiff Paul Sugar Jr. requested payment for the turquoise.

24.    Defendant has not paid Plaintiff for the No. 8 turquoise.

25.    Defendant has not returned the No. 8 turquoise.

26.    Defendant sold the No.8 turquoise to a third party.

## IV. ANALYSIS

Plaintiffs contend that Defendant "sold the Plaintiffs' No. 8 turquoise, which he did not pay for, refused to return, and in which he had no legal or equitable right or title." Motion, Doc. 70 at 7 (internal citations omitted). On that basis, Plaintiffs allege that Defendant committed conversion and was unjustly enriched when after selling the turquoise to a third party, Defendant

received and retained the proceeds from the sale. *Id.* at 5-6. Plaintiffs seek compensatory damages in the amount of $560,000 plus statutory pre and post judgment interest and costs. *Id.* at 6.

Defendant counters that while he discussed buying the No. 8 turquoise with Plaintiff Paul Sugar Jr., "they could not come to an agreement." Response, Doc. 76 at 4. Rather, Defendant asserts, the No. 8 turquoise was collateral in exchange for Defendant's promise to purchase a house in Florida for Plaintiff Paul Sugar Jr. until he could "find a loan" and then Plaintiff Paul Sugar Jr. would "purchase the house back from [Defendant] within a reasonable period of time." *See id.* at 5.

### A. Conversion Claim

Conversion is "'the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made.'" *In re Venie*, 395 P.3d 516, 526 (N.M. 2017) (quoting *In re Yalkut*, 176 P.3d 1119, 1126 (N.M. 2008). There are many forms of conversion. *See Case Credit Corp v. Portales Nat'l Bank*, 966 P.2d 1172, 1175 (N.M. 1998) (Minzner J., dissenting) (observing that the Reinstatement (Second) of Torts § 223 (1965) lists seven ways in which the tort may be committed). Plaintiff bases his conversion claim on "demand and refusal." To prove conversion based on demand and refusal, Plaintiff must show (1) that the plaintiff had the right of possession of personal property; (2) that the plaintiff demanded that the defendant return the property to plaintiff; and (3) that the defendant refused to return the property to plaintiff." *Nosker v. Trinity Land Co.*, 757 P.2d 803, 808 (N.M. Ct. App. 1988) (citing Restatement (Second) of Torts § 237 (1965) (additional citation omitted)). At the first step, Plaintiff must show that at the time of the alleged conversion, he had "a right to immediate possession" of the No. 8 turquoise based on an "ownership interest."

The undisputed facts demonstrate that Plaintiffs had an ownership interest in the No. 8 turquoise prior to the July 8, 2017 transaction, when Plaintiffs relinquished physical possession of it. Plaintiffs allege that they permitted Defendant to take the No. 8 turquoise under an oral contract in which Defendant agreed to buy the turquoise for $560,000. Defendant does not dispute that he took the No. 8 turquoise and kept it in a storage unit in Plaintiffs' name. As Plaintiff only relays the financial terms of the alleged oral contract, it is unclear if there were other terms that dictated what would happen if Defendant failed to pay.

In opposition, Defendant states that there was never a valid sales contract. According to Defendant: "We never reached an agreement on the price for the turquoise; the Plaintiff and I never came to terms. If we had reached an agreement, we would have had a contract written up just as I had in my purchase of the turquoise from Mr. Jennings in Nevada." Response, Doc. 76 at 3.

Substantively, Defendant's assertions imply that not only did he not enter a contract, but in the absence of a writing, there could be no valid sales contract. New Mexico has adopted Article 2 of the Uniform Commercial Code (UCC) which governs the sale of goods. As defined by the UCC, "goods" means all things . . . which are movable at the time of identification to the contract for sale." NMSA 1978 § 55-2-105(1). No. 8 turquoise meets this definition and so is a "good."  In a provision known as the "statute of frauds," contracts for the sale of goods of $500.00 or more are not enforceable through an "action or defense unless there is some writing sufficient to indicate that a contract for sale has been between the parties and signed by the party against whom enforcement is sought . . .." § 55-2-201(1). Both parties admit that there is no writing documenting an agreement.

A party alleging the existence of an oral contract may argue that one of three exceptions to the statute of frauds applies. The first is not relevant here as it applies to specially manufactured

goods, and neither party has asserted that the No. 8 turquoise was specially manufactured. *See* §
55-2-201(3)(a). The other two exceptions excuse the writing requirement "(b) if the party against
whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract
for sale was made, but the contract is not enforceable under this provision beyond the quantity of
goods admitted; or (c) with respect to goods for which payment has been made and accepted or
which have been received and accepted." § 55-2-201(3)(b)-(c) (internal citation omitted). Plaintiffs
do not squarely address either exception, but functionally, they appear to argue the third.

Plaintiffs contend that the undisputed facts and circumstances firmly establish that there
was an oral contract because 1) Defendant accepted the turquoise, and 2) Defendant's unsworn
statement that the parties never came to terms cannot rebut Plaintiff Paul Sugar Jr's sworn
statement that a contract exists. Reply, Doc. 78 at 4-5. To prove the formation of a valid contract
under New Mexico law, the party seeking enforcement generally must show that the contract is
'factually supported by an offer, an acceptance, consideration, and mutual assent." *Strausberg v.*
*Laurel Healthcare Providers, LLC*, 304 P.3d 409, 419-420 (N.M. 2013) (quoting *Garcia v. Middle*
*Rio Grande Conservancy Dist.*, 918 P.2d 7, 10 (1996). Acceptance requires a "manifestation of
unconditional agreement to all of the terms of the offer and an intention to be bound thereby."
*Stevenson v. Louis Dreyfus Corp*, 811 P.2d 1308, 1310 (N.M. 1991) (citation omitted). "Mutual
assent is based on the objective evidence, not the private undisclosed thoughts of the parties." *Pope*
*v. Gap, Inc.*, 961 P.2d 1283, 1287 (N.M. Ct. App.)

Plaintiffs' argument that there was a contract with mutually agreed terms relies heavily on
Plaintiff Paul Sugar Jr's sworn statements. But unilateral statements are not controlling as to the
terms of the contract or as to a party's acceptance of those terms. To demonstrate that there was a
valid oral contract, Plaintiff must present objective evidence.

Plaintiff has presented three facts that support an inference that Defendant accepted the goods and assented to a sale: 1) Defendant took physical possession of the No. 8 turquoise, 2) after Defendant took control of the No. 8 turquoise, he maintained control over it; 3) Defendant signed a lease with a storage facility, and he kept the No. 8 turquoise there.

Defendant argues that these facts do not establish that he agreed to buy the No. 8 turquoise. While Defendant admits there was an oral agreement, he claims that there were different terms. The No. 8 turquoise, Defendant claims, was collateral for his agreement to finance a home in Florida for Plaintiff Paul Sugar Jr. and his wife. Defendant also presents some objective facts that support his version of the agreement.

First, Defendant presents warranty deeds that Defendant held title to a Florida property, which he later transferred to CP Holdings. Next, he points to the existence of a case in the Northern District of Florida where Plaintiff Paul Sugar Jr. and his wife disputed legal title of the Florida property. In that proceeding, Plaintiffs alleged they had an interest in the Florida property through Defendant. Finally, a transcript gives further support to the Defendant's claim that the No. 8 turquoise was collateral for Defendant's purchase of the Florida property for Plaintiff Paul Sugar Jr.  In the transcript, which Plaintiffs produced as evidence, Defendant states, "You know, I had to buy Paul Sugar a house today because he turned over his turquoise and gave me your guys' information." *See* Reply, Doc. 78-2 at 4:4-8.[4] Defendant claims that he sold the No. 8 turquoise, when Plaintiff Paul Sugar Jr. did not pay him.

---

[4] Plaintiffs argue that Defendant's purchased the house with another party's money. They support this claim with excerpts from Defendant's deposition. But how Defendant purchased house is not dispositive of the nature and type of agreement between he and Plaintiffs.

In sum, the parties concur that there was an oral agreement, but they dispute the terms of that agreement. As the type and terms of the oral agreement are facts material to the issue of who had legal title to the No. 8 turquoise, summary judgement is not appropriate now.

### B.  Unjust Enrichment Claim

Plaintiffs also seek summary judgment on their unjust enrichment claim. Unjust enrichment is an equitable remedy for when "in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity." *Ontiveros Insulation Co., Inc. v. Sanchez*, 3 P.3d 695, 698-699 (N.M. 2000). To establish a claim for unjust enrichment, a plaintiff must show that: "(1) another has been knowingly benefitted at [plaintiff's] expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *Id.* at 699.  At this point in the proceedings, Plaintiffs have not factually established that Defendant benefitted at his expense.

## V.  CONCLUSION

Plaintiffs have not met their burden and shown that there are undisputed material facts on their conversion claim or their unjust enrichment claim. The terms of the oral agreement between Plaintiffs and Defendant govern who lawfully possessed the turquoise at the time Defendant sold it. There are objective facts that support both Plaintiffs and Defendant's competing allegations as to those terms. These factual issues are for a jury to resolve.

**THEREFORE, IT IS ORDERED THAT** Plaintiffs' Motion for Summary Judgment on Claims for Conversion and Unjust Enrichment (Doc. 70) is **DENIED.**

**IT IS SO ORDERED.**

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**

13